Day, J.
 

 This is an action in
 
 quo warranto,
 
 begun in this court. The facts out of which the controversy grows, as appear in the pleadings, the testimony taken, and the stipulations of counsel as stated to the court in the oral argument, are as follows:
 

 Carl Vandenbark was elected as ,a member of the board of education of the county school district of Muskingum county for a term of four years from the third Saturday of January, 1930. In November, 1931, on Monday before Thanksgiving, Vandenbark began working as district manager at Jackson, Jackson county, Ohio, for the Farm Bureau Mutual Automobile Insurance Company, working under the direction of the home office of such company in Columbus, Ohio. On the 19th day of January, 1932, Vandenbark removed with his family from such county school district in Musldngum county to the city of Jackson, in Jackson county, where he continued in the work of said employer. He appears to have taken his family and some of his household goods, and to have rented a house and installed himself and family, and he continued to maintain such habitation at Jackson until after the 25th day of June, 1932.
 

 Vandenbark disclaims that he had any intention of surrendering his legal residence and domicile in Muskingum county, and says that his abode in Jackson county was temporary only, and that he intended ultimately to return to Muskingum county; that he had a post office box at Dresden, Muskingum county, and received personal mail at Dresden; that he voted in
 
 *205
 
 Muskingum county; and that he rented a room at his father’s home and stored some of his goods there. During the period in which he was absent from Muskingum county he continued to return there for occasional week-ends, and on the occasions of the meetings of the school board he attended such meetings and took part in their proceedings.
 

 On March 19, 1932, Yandenbark, and J. A. Littick and J. K. Graham, two associates on the board of education, employed F. D. Ring as county superintendent for the period of three years, beginning August 1, 1932, at a salary of $3,000 per year, payable in monthly installments of $250 each. This appointment was made about 2 o’clock in the afternoon, the other two members of the board voting against such appointment. At 11 o’clock in the morning of the same day, notice had been served upon Yandenbark, Littick and Graham that an application had been filed in the probate court to fill the vacancy claimed to exist in the board of education by reason of the removal of Yandenbark from the district on January 19 preceding, more than thirty days having elapsed since his removal, within which time the board of education, under the law, had authority to fill such vacancy; and that it having failed to do so the probate court, pursuant to statute, had undertaken that duty.
 

 Section 7610-1, General Code, provides that in the event a board fails to fill a vacancy within thirty days after the same occurs the probate court shall act instead of the county board of education.
 

 An examination of Section 4748, General Code, shows that any of the following grounds are sufficient to create a vacancy in any board of education: First, death of a member; second, nonresidence; third, resignation; fourth, removal from office; fifth, failure of a person elected or appointed to qualify within ten days after the organization of the board, or his appointment; sixth,
 
 removal from the district;
 
 seventh, ab
 
 *206
 
 sence from meetings of the board for a period of ninety days, etc.
 

 It is to be noted that
 
 nonresidence
 
 is one ground, that a separate and distinct ground is
 
 removal from the district,
 
 thus apparently indicating the legislative intent to distinguish between nonresidence, as such, and removal from the district, as two entirely separate and different things.
 

 The history of Section 4748, General Code, shows that the term “non-residence” was incorporated in the original act, in 1873, 70 Ohio Laws, 195, Section 43, page 206; that in 1904 the term “removal from the district” appears in Section 3981,' Revised Statutes, 97 Ohio Laws, 334, at page 355.
 

 It is probable that the Legislature had in view that “non-residence” contemplates the permanent absence of the member from the district, the giving up of his domicile therein, the acquiring of a new one, in fact, with the intention to abandon the old one, considering “domicile” as the place where a man has his true, fixed and permanent home and principal establishment, and to which, when he is absent, he has the intent and purpose to ultimately return; while “removal from the district” contemplates that the member no longer has his habitation or abode in the district, and, therefore, might not become familiar with any developments in school needs within the county, and thereby hinder the conduct of the board of education, and that such removal from the district was ground for declaring a vacancy, and of sufficient importance, even though the removal of the member was not permanent, and such member had the intention to ultimately return to the domicile of origin.
 

 "Whatever may have been the legislative intent, the language indicates a distinction between “non-residence” and “removal from the district;” the existence of either • ground being sufficient to create a vacancy.
 

 
 *207
 
 It is a cardinal rule of statutory construction that courts must give effect, if possible, to the whole statute, and every part of it, and an interpretation which gives effect to the entire language as against one that does not.
 

 On June 25, 1932, the probate court of Muskingum county, having been asked to act in the premises, had a hearing, took testimony and found that a vacancy did exist since January 19, 1932, by reason of the removal of Vandenbark from said district on said date, and the probate court appointed F. C. Whartenby to fill such vacancy. Whartenby took the oath of office and entered upon the performance of the duties of his office as a member of the county board of education of Muskingum county.
 

 On September 6, 1932, the county board of education, as then constituted, by resolution duly passed, found that Ring had been illegally appointed, and dispensed with his services and employed Charles Westcott as county superintendent, who undertook to perform the duties of that office, but found that the respondent, Ring, was already occupying and discharging the duties of the office, and this litigation resulted, in an effort by the relator, Westcott, to oust the respondent, Ring, from the office of county superintendent.
 

 It is the contention of relator, Westcott, that Ring was never legally appointed by the county board of education, having received the votes of only two members, less than a majority; that the third vote claimed by Ring was that of Vandenbark, who, the relator claims, was not qualified to cast a vote in the selection of the county superintendent and was not a member of the board' of education at that time, by reason of his removal from the district.
 

 So that in this proceeding by Westcott to oust Ring the question is whether or not the vote of Vandenbark is sufficient in law to be counted in making a majority
 
 *208
 
 of the board when Ring was selected; thus giving Ring a majority of the board, entitling him to stand on his contract of employment.
 

 Even though it be conceded that the removal of Yandenbark from the district into another county was for temporary purposes only, with the ultimate intention to return to Muskingum county, and that he never had given up his domicile in such county, and that Section 4748, G-eneral Code, provides for “removal from the district,” even though temporary in character, as sufficient grounds for creating a vacancy, yet the fact remains that Yandenbark did return upon the occasion of each meeting of the board, from January 19th down to June 25th, that he took part in the proceedings of the board and the transaction of its business, and regarded himself as a lawful member of the board.
 

 Under such circumstances, the acts of Yandenbark constitute the acts of an officer
 
 de facto,
 
 even though he was not an officer
 
 de jure.
 
 The transaction in question took place on March 19, 1932. True, a controversy was going on as to the status of Yandenbark; but so far as the record in this case shows he maintained his right to take part in the proceedings of the board, and did take part upon the date indicated, to wit, March 19, 1932.
 

 The general rule is that acts of a
 
 de facto
 
 officer are to be upheld as valid, so far as they involve the interests of the public and of third persons, until his title to the office is adjudged insufficient.
 

 The board had the power to employ a county superintendent, which must be done before July 20th of that year, and it is not questioned but that the board acted within its rights in the employment of Ring. The acts of a
 
 de facto
 
 officer must comply with the requirements of applicable law, to the same extent and in the same manner as valid acts of
 
 de jure
 
 officers. The record shows no charges against Ring; nor is there
 
 *209
 
 any affirmative showing that he was not qualified to discharge the duties of the office of county superintendent. True, controversy existed as to the status of Vandenbark as a member of the board; but Ring is not shown by the record to have been a party to any connivance, collusion or bad faith, in so far as his selection by the board was concerned.
 

 The acts of Vandenbark as a member of the board of education were at least valid acts of a
 
 de facto
 
 officer, and as such the appointment of Ring by the board on March 19th was within statutory authority, and, there being no showing of fraud, connivance or collusion in so far as Ring was concerned, the writ must be denied.
 

 Writ denied.
 

 Weygandt, C. J., Stephenson, Jones and Matthias, JJ., concur.
 

 Allen and Kinkade, 'JJ., not participating.