THE STATE, EX REL. BROTHERS, *v.* ZELLAR ET AL., BOARD OF TAX
APPEALS.

[Cite as State, ex rel. Brothers, v. Zellar, 3 Ohio App. 2d 43.]

44

(No. 8039—Decided July 6, 1965.)

*Messrs. Lucas, Prendergast, Albright & Warren* and *Mr. Rankin M. Gibson*, for relator.

*Mr. William B. Saxbe*, attorney general, *Mr. Robert M. Duncan* and *Mr. William M. Culbert*, for respondents.

Bryant, P. J. An action in mandamus has been filed in this court. The case was submitted on the pleadings, an agreed statement of facts, the briefs of the parties and the arguments of counsel. There is no dispute or disagreement as to the material facts but only as to the legal effect thereof.

This proceeding was begun by Merrill D. Brothers, as relator, who claims he is a member of the Board of Tax Appeals, against Robert E. Zellar and Edwin F. Sawicki, also members of the Board of Tax Appeals, respondents.

Brothers alleges he has served a six-year term as a member of the Board of Tax Appeals, the term expiring on February 8, 1965. He claims that under the provisions of Section 3.01, Revised Code, he is entitled to continue to serve until his successor is lawfully "appointed and qualified." It is the contention of Brothers that under the provisions of Section 5703.03, Revised Code, creating the Board of Tax Appeals, it is provided that members of such board shall be appointed by the Governor "with the advice and consent of the Senate" and that this section has not been complied with as to two appointments made by the Governor since the date of the expiration of the term held by Brothers.

The first appointment referred to was that of James R. Gould, made on February 5, 1965, for the term starting February 9, 1965, and continuing for six years, in which case it appears that Gould obtained his commission from the Governor, furnished bond, took the oath of office, and, on February 11, 1965, presented himself at the offices of the Board of Tax Appeals to assume the duties of the office.

At that time, the Board of Tax Appeals adopted a journal entry relative to "the appointment of James R. Gould as a member of said board," apparently by action of the respondents herein, Robert E. Zellar, now Chairman, and Edwin F. Sawicki, Vice Chairman of the board, in which it was determined that Mr. Gould had been "commissioned" and having taken the oath of office and furnishing the required bond "thereby, on said date [February 11, 1965], Mr. Gould replaced Merrill D. Brothers as a member of the Board of Tax Appeals." The entry directed that a certified copy thereof be sent to the State Personnel Department and the Auditor of the Department of Taxation and fixed the compensation of Gould at $12,000 per year.

No reference was made in the entry to any action by the Ohio Senate as to the Gould appointment, this entry (Agreed Statement of Facts) reading as follows:

"2. On February 11, 1965, the respondents, Robert E. Zellar and Edwin F. Sawicki, caused to be made, docketed and journalized the following entry of the Board of Tax Appeals which was approved by the affirmative vote of both of said respondents:

" 'BEFORE THE BOARD OF TAX APPEALS
DEPARTMENT OF TAXATION
STATE OF OHIO

" 'In the matter of the organization )
of the Board of Tax Appeals following )   ENTRY
the appointment of James R. Gould as )
a member of said Board.           ) February 11, 1965

" 'Whereas, under date of February 9, 1965, Mr. James R. Gould was commissioned by the Governor of Ohio as a member of the Board of Tax Appeals, Department of Taxation, State of Ohio for the term ending the second Monday in February in the year 1971, and whereas Mr. Gould subscribed to the oath of office and gave the bond required by law under date of February 11, 1965, and thereby, on said date, Mr. Gould replaced Merrill D. Brothers as a member of the Board of Tax Appeals, and the Board of Tax Appeals this day took up for consideration the matter of the organization of said Board.

" 'And thereupon, it was moved by Mr. Sawicki that Mr. Zellar be elected as Chairman of the Board. On roll call the motion was adopted and Mr. Zellar was declared elected as Chairman of the Board of Tax Appeals.

" 'And, thereupon, it was moved by Mr. Zellar that Mr. Sawicki be elected as Vice Chairman of the Board. On roll call the motion was adopted and Mr. Sawicki was declared elected as Vice Chairman of the Board of Tax Appeals.

" 'It is ordered that a certified copy of this entry be sent to the Department of Personnel of the State of Ohio and to the Auditor of the Department of Taxation of Ohio with instructions to enter the name of James R. Gould on the payroll of the Board of Tax Appeals as of February 11, 1965, at an annual salary of $12,000 as provided by law.

" 'I hereby certify the foregoing to be a true and correct copy of the action of the Board of Tax Appeals of the Department of Taxation this day taken with respect to the above matter.

/s/    James E. Henry
───────────────────
Secretary' "

The second appointment referred to was that of Francis B. Douglass, and in this connection it appears that Douglass was appointed by the Governor on April 7, 1965, for the remainder of the six-year term ending February 8, 1971, and that on April 20, 1965, Douglass received his commission, took the oath of office, filed an approved bond and presented himself at the board offices, and since that date has voted on matters coming before the board. On April 20, 1965, again apparently by action of the two respondents herein, a journal entry was spread upon the journal of the board, stating among other things that James R. Gould had resigned, that Douglass had been commissioned by the Governor, and on April 20, 1965, took the oath of office and furnished the required bond "and thereby, on said date, Mr. Douglass became a member of the Board of Tax Appeals."

The text of the journal entry is set forth in the Agreed Statement of Facts, reading as follows:

"14. On April 20, 1965, the following entry was journalized in the records of the Board of Tax Appeals:

" 'BEFORE THE BOARD OF TAX APPEALS
DEPARTMENT OF TAXATION
STATE OF OHIO

" 'In the matter of the organiza-     )
tion of the Board of Tax Appeals     )     April 20, 1965
following the appointment of          )
FRANCIS B. DOUGLASS as a member       )     ENTRY
of said Board.                        )

" 'Whereas, under date of April 12, 1965, Mr. Francis B. Douglass was commissioned by the Governor of Ohio as a member of the Board of Tax Appeals, Department of Taxation, State of Ohio, to fill the unexpired term of James R. Gould, who resigned effective at the close of business April 2, 1965, said

term ending the second Monday in February in the year 1971, and whereas Mr. Douglass subscribed to the oath of office and gave bond required by law under date of April 20, 1965, and thereby, on said date, Mr. Douglass became a member of the Board of Tax Appeals.

" 'Thereupon, the matter of the organization of the Board of Tax Appeals was raised. Mr. Douglass made a motion that the entry of the Board of Tax Appeals, dated February 11, 1965, wherein Mr. Zellar was elected Chairman and Mr. Sawicki was elected Vice-Chairman, be affirmed. On roll call the motion of Mr. Douglass was adopted.

" 'It is ordered that a certified copy of this entry be sent to the Department of Personnel of the State of Ohio and to the Payroll Auditor of the Department of Taxation with instructions to enter the name of Francis B. Douglass on the payroll of the Board of Tax Appeals as of April 20, 1965, at an annual salary of $12,000, as provided by law.

" 'I hereby certify the foregoing to be a true and correct copy of the action of the Board of Tax Appeals of the Department of Taxation this day taken with respect to the above matter.

/s/   Ronald R. Calhoun

Acting Secretary' "

It is not in dispute here that in 1959 relator was appointed and qualified, and since then has acted as a member of the board for a six-year term ending February 8, 1965, during which time he was paid at the rate of $8,400 per annum, the first paragraph of the Agreed Statement of Facts reading as follows:

"1. The relator, Merrill D. Brothers, on February 28, 1959, was appointed a member of the Board of Tax Appeals for a term beginning the second Monday in February, 1959, and ending on the second Monday in February, 1965, and on February 28, 1959, was commissioned, filed his bond, and took the oath of office. The Ohio Senate gave its advice and consent to his appointment on March 10, 1959. The relator was paid at the rate of $8,400 per annum from March 10, 1959 through February 8, 1965, and the sum of $92.32 for the 9th and 10th days of February, 1965, which is at the rate of $12,000 per annum."

Under the stipulations agreed to, it is clear that the Senate of the 106th General Assembly of Ohio convened in regular session on January 4, 1965, and except for a recess from January 12, 1965, to February 1, 1965, has been in continuous session (Agreed Statement of Facts) since February 1, 1965, including by express reference the three dates of prime importance here, namely, February 8, 1965, when the term of Brothers came to an end, February 11, 1965, when Gould completed steps required of him to take office, and early April 1965, when Douglass completed steps required of him to take office.

Space will not permit setting forth here the four pages (Agreed Statement of Facts) in which the relator sets forth (agreed to by all parties) the steps taken to preserve his claim of right to continue in office by virtue of the holdover provisions of Section 3.01, Revised Code. From this material it is clear that Brothers has by spoken and written words and acts maintained his continuous claim to the office even to the point of affixing his initials to 68 of 493 entries journalized by the board between February 11, 1965, and April 21, 1965, although it appears that respondents had no knowledge and gave no consent to such action.

Suffice it to say in this regard that Brothers has presented himself at the board offices each business day without exception, but that the board removed his name from the door of the office formerly occupied by him, removed his name from facsimile stamps, and caused the name of the two successors to be entered on the payroll and the name of Brothers to be removed from the payroll. The latter presented a letter to the remaining members of the board on March 1, 1965, setting forth his claim to the office, and later, on April 13, 1965, furnished them with a blank form of entry rescinding the earlier action taken. The entry was not approved by respondents.

The answer filed on behalf of the respondents admits most of the material allegations of the petition but disputes the legal effect thereof. With reference to the appointments of Gould and Douglass, the answer alleges as follows:

"Answering further respondents say that on February 5, 1965, Governor James A. Rhodes, appointed James R. Gould to membership on the Ohio Board of Tax Appeals for a term starting February 9, 1965, and ending February 8, 1971. James

R. Gould took his oath of office on February 10, 1965, and his bond was approved by the Governor on February 10, 1965, and on the same day filed with the Secretary of State. James R. Gould's appointment was reported to the Ohio Senate on February 9, 1965, on which date his commission was issued.

"Further answering respondents aver that on February 11, 1965, James R. Gould took office as a member of the Board of Tax Appeals and performed the duties of said office. James R. Gould resigned effective at the close of business April 2, 1965. ''* * *

"On February 24, 1965, the minority leader of the Senate moved that the Clerk of the Senate read the appointment by the Governor of James R. Gould as a Member, Board of Tax Appeals. The majority leader objected. A roll call vote was taken on said motion resulting in 16 yeas and 15 nays. The motion was agreed to and the President thereupon handed down the Governor's message reciting the appointment of James R. Gould as aforesaid. Thereupon, the question was put: 'Shall the Senate advise and consent to the appointment by the Governor?' The yeas and nays were taken resulting in 15 yeas and 16 nays. The Senate Journal for Wednesday, February 24, 1965, at the bottom of page 9, reports:

" 'So the Senate refused to advise and consent to said appointments.'

"One of said appointments was that of James R. Gould.

"Respondents say that James R. Gould performed the duties of member of the Board of Tax Appeals from February 11, 1965, through February 15, 1965, and was paid by the State of Ohio for his services during that period.

"Respondents say that on April 7, 1965, Francis B. Douglass was appointed to membership on the Ohio Board of Tax Appeals for a term beginning April 12, 1965 and ending February 8, 1971. Said appointment was to fill the unexpired term of James R. Gould, who resigned effective at the close of business April 2, 1965. Mr. Douglass received his commission and was administered the oath of office and gave bond as required by law on April 20, 1965, and on April 20, 1965, began to perform the duties of member of Board of Tax Appeals, which duties he has continued to perform, and is presently performing. Respondents say that on April 7, 1965, the appointment of Mr.

Douglass as a member of the Board of Tax Appeals was reported to the Senate. The appointment is currently in the Rules Committee of the Senate."

This was followed by a general denial and five affirmative defenses which in substance are as follows:

1. The acts which relator seeks to have performed by writ of mandamus are not acts "which the law specially enjoins as a duty upon these respondents" who "do not have a legal duty to make any entries" respecting relator's name on the board's payroll.

2. Gould was appointed and qualified as successor to Brothers effective February 11, 1965.

3. Douglass, on April 20, 1965, was qualified as a member of the board succeeding Gould who resigned.

4. Under provisions of Section 21, Article III, Constitution of Ohio, the Ohio Senate failed to act on the appointment of Gould prior to his resignation, and to date the Ohio Senate has not refused to consent to the appointment of Douglass, who, therefore, is qualified as a member of the board.

5. Brothers is not entitled to be paid at the rate of $12,000 a year because his salary before and during his six-year term was $8,400.

With reference to the events occurring after the appointment of Gould, the Agreed Statement of Facts reads as follows:

"8. On February 5, 1965, James R. Gould was appointed by Governor James A. Rhodes for a term starting February 9, 1965, and ending February 8, 1961, as a member of the Ohio Board of Tax Appeals as successor to Merrill D. Brothers. The appointment was reported to the Ohio Senate on February 5, 1965. James R. Gould took an oath of office and filed an approved bond with the Secretary of State on February 10, 1965. On February 5, 1965, a commission effective February 9, 1965, was issued. James R. Gould was paid $546.16 in salary for the period from February 11, 1965 to February 24, 1965. At various times during that period [nine business days] James R. Gould considered and discussed pending cases, decisions and general matters and procedures involving the Ohio Board of Tax Appeals with respondents and members of the staff and in general performed the duties of such office. If James R. Gould

performed any of the aforesaid duties such is not known to the relator and is not recorded in the journal of the Board of Tax Appeals.

"9. On February 24, 1965, the minority leader of the Senate moved that the Clerk of the Senate read the appointment by the Governor of James R. Gould as a member, Board of Tax Appeals. Upon objection of the majority leader, a roll call vote was taken on said motion, resulting 16 yeas and 15 nays. Thereupon, the President handed down the Governor's message reciting the appointment of James R. Gould. Thereupon, the question was put: 'Shall the Senate advise and consent to the appointment by the Governor?' The yeas and nays were taken and resulted—yeas 15, nays 16. The Senate Journal for Wednesday, February 24, 1965, on page 9, reports: 'So the Senate refused to advise consent to said appointment.'

"10. On March 17, 1965, James R. Gould sent the following letter to the Governor of Ohio:

"'March 17, 1965

"'Honorable James A. Rhodes
State House
Columbus, Ohio

"'Dear Governor Rhodes:

"'I hereby resign from the position of member of the Board of Tax Appeals of the State of Ohio. This resignation is effective at the close of business today, March 17, 1965.

/s/   James R. Gould
James R. Gould'"

With reference to the events following the appointment of Douglass, the Agreed Statement of Facts reads as follows:

"13. Francis B. Douglass was appointed to serve as a member of the Ohio Board of Tax Appeals on April 7, 1965, for a term ending February 8, 1971, vice James R. Gould or vice Merrill D. Brothers. On April 7, 1965, the appointment of Francis B. Douglass was reported to the Ohio Senate which has not acted on said appointment. On April 20, 1965, Francis B. Douglass filed an approved bond, received his commission, and took his oath of office. Francis B. Douglass has participated and

voted in each and every matter considered by the Ohio Board of Tax Appeals since April 22, 1965.''

The first affirmative defense of respondents is that mandamus will not lie for the reason that the acts which relator wishes this court to demand the respondents to perform are not those specially enjoined by law as a duty on respondents, and the respondents are under no duty to make any entry placing the name of relator on the board's payroll. This is certainly a novel argument to be advanced by the respondents in view of the alacrity with which they acted in removing Brothers' name from the payroll. The prayer of the relator's petition reads as follows:

''WHEREFORE, The relator prays this court to issue to the respondents Robert E. Zellar and Edwin F. Sawicki, Members of the Board of Tax Appeals of the State of Ohio, a writ of mandamus requiring said respondents to enter the name of the relator, Merrill D. Brothers, on the payroll of the Board of Tax Appeals as of February 11, 1965, and at an annual salary of $12,000 and to instruct the auditor and fiscal officer for the Board of Tax Appeals to submit a proper voucher covering the same to the auditor of the State of Ohio for payment; to forward a certified copy of such entry of the Board of Tax Appeals to the Department of Personnel of the State of Ohio and to the auditor and the fiscal officer of the Department of Taxation of Ohio; and to maintain the name of the relator on the payroll of the Board of Tax Appeals and to refrain from removing the same from the payroll records of the Board of Tax Appeals until such time as evidence is received by the Board of Tax Appeals that a successor to the relator, Merrill D. Brothers has been appointed and has qualified for office.''

As to the powers and duties of the board, the Agreed Statement of Facts reads as follows:

''The Board of Tax Appeals is a coordinate branch of the Ohio Department of Taxation. The board prepares its own budget and funds are appropriated to it by the General Assembly. The board appoints its own secretary and such other employees as are necessary in the exercise of the powers and the performance of the duties and functions which it is by law authorized and required to exercise and it prescribes the duties of all such employees, and fixes their compensation as

provided by law. The board has and prepares its own payroll, which is signed by the Chairman of the Board of Tax Appeals. The board maintains a journal according to law in which it keeps a record of all official proceedings and the vote of its members upon every such action taken by it pursuant to the provisions of Sections 5703.02 (G) and 5703.13, Revised Code. Section 5703.13, *supra*, reads in pertinent part as follows:

" 'A majority of the Board of Tax Appeals shall constitute a quorum to transact business, and any vacancy does not impair the right of the remaining members to exercise all the powers of the board so long as a majority remains. * * *' "

We are unable to agree with the contention in the first affirmative defense that relator has chosen the wrong remedy. It is stipulated and agreed that respondents have spread upon their official journal the determination that Brothers' term has come to an end, that Gould and Douglass were fully qualified to succeed him, and that they were entitled to be paid the salary of the office, the name of Brothers having been officially ordered removed from the payrolls.

It is also clear that other steps have been taken to prevent Brothers from using the office space assigned to him, participating in the hearings and determinations of the board, and otherwise ousting Brothers from the performance of the duties of a member of the Board of Tax Appeals. In substance and effect, the relief sought by Brothers, if granted, will have the effect of restoring him to the possession of the office from which he claims he has been illegally removed.

The Supreme Court of Ohio has held that mandamus is the proper remedy under such circumstances. In the case of *State, ex rel. Moyer,* v. *Baldwin* (1908), 77 Ohio St. 532, the first paragraph of the syllabus reads as follows:

"Mandamus is the proper remedy to restore a party to the possession of an office from which he has been illegally removed."

In course of the opinion by Summers, J., the court, at page 536, gives a review of the origin of this writ, and at page 539 there appears the following:

"That the writ of mandamus is the appropriate remedy to restore an officer to his office and that it will lie when there is no

other adequate remedy, is laid down in the text books without exception * * *.''

In the case of *State, ex rel. ClenDening,* v. *Rose* (1915), 93 Ohio St. 284, the court held as follows:

''Mandamus is the proper remedy to restore a party to the possession of an office from which he has been illegally removed. *The State, ex rel. Moyer,* v. *Baldwin,* 77 Ohio St., 532; *Karb, Mayor,* v. *The State, ex rel. Carter,* 87 Ohio St., 197, and *The State, ex rel. Stafford,* v. *The State Board of Appraisers and Assessors,* 84 Ohio St., 505.''

There is, of course, still another reason why mandamus is appropriate in the case now before us. The respondents by the two journal entries hereinabove set forth on February 11, 1965, and again on April 20, 1965, took effective action to terminate Brothers' salary and connection with the job, and Brothers is in effect asking for an order requiring the rescinding of that action. Furthermore, it is stipulated here that the board prepares its own budget and that funds are directly appropriated to it.

It is undisputed here that by the board's entry of February 11, 1965, they officially determined that Gould replaced Brothers, that Gould was entitled to $12,000 a year salary and that their journal entry should be certified to the Department of State Personnel and the Auditor of the Department of Taxation. It is also undisputed here that on April 20, 1965, a similar entry was adopted and ordered certified to the Department of State Personnel and ''to the Payroll Auditor of the Department of Taxation with instructions to enter the name of Francis B. Douglass on the payroll of the Board of Tax Appeals.''

Obviously, the mere course of conduct of the remaining board members is alone and of itself totally insufficient to make it a duty enjoined on them by law, but an examination of the statutes involved makes it clear that the board does have a duty with reference to payrolls. Referring to Amended House Bill No. 711 of the 105th General Assembly of Ohio, entitled ''To make general appropriations for the biennium beginning July 1, 1963 and ending June 30, 1965,'' we find, at page 5, that the appropriations are separately made to the Board of Tax Appeals and that for each of the two years of the appropriation

period the sum of $185,920 is appropriated to the board directly for personal service, these figures being included in a total of $473,620 appropriated directly to the board, separate and apart from the total of $12,026,380 appropriated generally to the Department of Taxation.

Referring to Chapter 5703 of the Revised Code, and in particular to Section 5703.02, it is expressly provided that the board "shall exercise the following powers and perform the following duties," including, in paragraph (F), appointing a secretary and "such other employees as are necessary," prescribing "duties of all such employees, and to fix their compensation as provided by law;" and, in (G), "Maintain a journal, which shall be open to public inspection, in which it shall keep a record of all of the proceedings, the vote of each of its members upon every action taken by it."

Chapter 125 of the Revised Code establishing the Department of Finance, and in particular Section 125.01, indicates that the funds here involved are public money and that each agency of state government subject to the Department of Finance must comply with the requirements of that department as authorized in Section 125.03, Revised Code, "respecting the submission of statements of proposed expenditures, orders, invoices, claims, vouchers, or payrolls."

We conclude that the appropriation for personal service above referred to having been made directly to the board, action by the board was required for the expenditure of the amounts available for personal service, and that the board, having been authorized and required to keep a journal, was under a duty to act with reference to payrolls. We conclude, however, that so far as the amount of salary of the members of the board and the names of the persons to receive such salary, both are ministerial acts and do not involve the exercise of any discretion on the part of the board, and, if wrongfully or improperly executed, may be subject to control by writ of mandamus. The first affirmative defense is not well taken and is overruled.

It seems clear that the effect of Section 3.01 of the Revised Code as applied to the six-year term served by Brothers was to extend that term until such time as his successor was lawfully appointed and qualified. The respondents contend that the steps taken by the Governor with respect to Gould were

sufficient to bring Brothers' right to the office to an end. It is agreed that all other steps required except the advice and consent of the Senate were properly and fully taken on or about February 11, 1965, and that the Senate was in session at all times after February 1, 1965.

It also is agreed that the appointment was reported to the Senate and that the Senate did not give its consent, but, on the contrary, on February 24, 1965, refused such consent. The Agreed Statement of Facts states that by letter dated March 17, 1965, Gould resigned his position effective at the close of business that day. The Agreed Statement of Facts, in the second board entry, states that Gould resigned effective at the close of business April 2, 1965.

In view of the above conflicting statements, it is somewhat difficult to understand that part of the fourth affirmative defense which states that the Senate "failed to act on the appointment of James R. Gould prior to his resignation." To us it seems that the parties have agreed that the Senate on February 24, 1965, voted on Gould's appointment and that the result was yeas 15 and nays 16, whereby the Senate refused to advise and consent such appointment.

In 1961 a provision of state law requiring an appointment by the Governor to be submitted to the Senate for its advice and consent was held unconstitutional by the Supreme Court of Ohio, and thereafter a constitutional amendment was submitted and approved by the electors ratifying such procedure.

It was in the case of *State, ex rel. Burns*, v. *DiSalle, Governor* (1961), 172 Ohio St. 363, involving the confirmation by the Senate of an appointment by the Governor to the State Racing Commission that the Supreme Court so held, the syllabus reading as follows:

"The provision of Section 3769.02, Revised Code, which requires that the names of appointees to the State Racing Commission be submitted to the Senate for its 'advice and consent,' confers upon the General Assembly an appointive power prohibited by Section 27, Article II of the Constitution of Ohio, and such provision is, therefore, invalid and of no force and effect."

Thereafter, the General Assembly submitted, and the electorate approved, Section 21 of Article III of the Constitu-

tion of Ohio, which in the first two paragraphs provides that appointments to state office may be subject to Senate confirmation if so provided by law, ratifying statutes previously containing such provisions, authorizing the amendment of such statutes and specifically providing that ''no appointment shall be consented to without concurrence of a majority of the total number of Senators provided for by this Constitution.'' Other provisions of the section deal with the requirement that the Senate shall act during the session on names submitted and other provisions implementing the section.

We are of the opinion that the consent of the Senate is a part of the power to appoint, at least under circumstances present here, when the term expires and the appointment is made while the Senate is in session with the office filled by a lawful holdover officer. Bell, J., in the opinion in *Burns* wrote as follows at page 368:

''Since the appointment is incomplete without the advice and consent of the Senate, the 'advice and consent' action by the Senate is necessarily a part of the appointing power.''

In 81 Corpus Juris Secundum 1001, States, Section 68b (2), the rule is stated as follows:

''Where an appointment is to be made by the Governor and concurred in or confirmed by another authority the appointment is not valid and complete until the action of all bodies concerned has been taken.''

If the foregoing correctly states the applicable law, and we believe it does, it would appear that when the Senate is in session and a vacancy occurs the Governor and the Senate together exercise the appointing power, and that, until the consent of the Senate affirmatively is obtained, the appointment is not a valid or effective one and is insufficient to terminate the service of a person lawfully holding over beyond the end of the term under the provisions of Section 3.01, Revised Code.

We do not have before us the questions relating to an appointment made where, due to death, resignation, removal or other similar situations, an actual vacancy exists, and with respect to any of the foregoing, we expressly refrain from making any decision or expressing any opinion. Likewise, we are not confronted with a situation where an interim appointment

is made, nor do we have the situation with respect to newly created offices.

The provisions of Section 21 of Article III of the Constitution of Ohio, as adopted in 1961, are long, quite involved and raise quite a number of questions. We are not unmindful of the difficulties attendant upon the determination of the questions now before us and shall welcome further review thereof.

For the reasons above set forth, we conclude that the second, third and fourth affirmative defenses must be overruled.

The fifth affirmative defense asserts that even if Brothers is entitled to continue on after the expiration of his six-year term on February 8, 1965, he is not entitled to the $12,000 a year salary now provided for that office for the reason that at the time of the starting of his six-year term the salary was $8,400 per year, and under the provisions of Section 20, Article II of the Constitution of Ohio, the salary of a public officer may not be changed during his existing term. This contention may not be upheld for the reason that Brothers does not have a term and that presently as a holdover member of the board he serves from day to day and until his successor is elected and qualified.

There have been a number of decisions respecting the statutory provisions authorizing an incumbent to hold office after his term expired. In the case of *State, ex rel. Sheets, Atty. Genl.*, v. *Speidel* (1900), 62 Ohio St. 156, citing with approval *State, ex rel.*, v. *Dahl*, 55 Ohio St. 195, it was held that an appointee to an unexpired term had the "right to remain until his successor was elected and qualified" (page 160) and "there could be no vacancy then, unless Walker [the appointee] should die, resign, or be lawfully removed for cause." Also cited was *State, ex rel.*, v. *Wright*, 56 Ohio St. 540.

In *State, ex rel. Hoyt*, v. *Metcalfe* (1909), 80 Ohio St. 244, it was held that the rule above set forth was applicable in the case of a judicial office and that the attempt to make an appointment to an elective judicial office at the begnning of a new term by the Governor was void because the incumbent held over and there was no vacancy. The fifth paragraph of the syllabus in that case reads as follows:

"5. If after such appointment the appointee qualifies and enters upon the duties of the office, such appointee succeeds to

the entire term and capacity to hold over enjoyed by his predecessor, and no vacancy occurs at the expiration of the orignal term for which the resigning judge was elected. Hence an appointment made by the governor to take effect at the expiration of the six years term of the resigning judge confers no authority on the appointee to take or enjoy the office."

It has been held by the Supreme Court of Ohio that the Governor of Ohio has no inherent power to make appointments to public offices, and that such power must be derived from either the Constitution or the statutes. In *State, ex rel. Haines, Dir. of Mental Hygiene and Correction,* v. *Rhodes, Aud.* (1958), 168 Ohio St. 165, the first paragraph of the syllabus reads as follows:

"1. The Governor of Ohio has no inherent power to make appointments to public offices; such power must be derived from either the Constitution or the statutes."

The foregoing and numerous other decisions have upheld the validity of Section 3.01, Revised Code, and its predecessors, authorizing the incumbent of an office to continue to serve beyond the term for which he was appointed and until his successor is elected or appointed and qualified. As indicated, the salary of the members of the Board of Tax Appeals has been increased during Brothers' term of office. He, of course, during his six-year term was not entitled to receive it, and the question remains whether he is entitled to receive the higher rate for his service after his six-year term has ended.

The Supreme Court has passed upon this question and has held that the constitutional prohibiton against change of salary of an officer during such term does not apply to the holdover period, for the reason that the officer holding over does not have a term but merely a lawful tenure of indefinite duration.

In the case of *State, ex rel. Glander, Tax Commr.,* v. *Ferguson, Aud.* (1947), 148 Ohio St. 581, the syllabus reads as follows:

"1. The words, 'during his existing term,' as used in Section 20 of Article II of the Constitution of Ohio, which inhibits a change of 'salary of any officer during his existing term,' apply strictly to the term to which the officer is appointed or elected and not to the period constituting the statutory term of the office.

"2. The inhibition against change of salary of a public officer in Section 20, Article II of the Constitution of Ohio, does not apply to a person appointed to a partially expired statutory term, where the salary of the office is increased by statute effective during the preceding portion of such term and during the time such person was holding over in the office under his appointment thereto for the preceding statutory term."

From the Agreed Statement of Facts, it is apparent that due to the existing equal division in the membership of the Ohio Senate, there being exactly sixteen members of each of the two political parties, there was some delay in acting upon the appointment of Gould, after which it was rejected; and apparently more than two months have gone by since the submission of the name of Douglass without either approval or rejection by the Senate. The provisions of Section 21 of Article II of the Constitution of Ohio make it the duty of the Senate to act upon appointments submitted to it with the possible exception of those submitted during the final ten days before sine die adjournment. The third paragraph of Section 21 of Article III reads as follows:

"If an appointment is submitted during a session of the General Assembly, it shall be acted upon by the Senate during such session of the General Assembly, except that if such session of the General Assembly adjourns sine die within ten days after such submission without acting upon such appointment, it may be acted upon at the next session of the General Assembly."

We are of the opinion that the fifth affirmative defense is not well taken.

For the reasons set forth above, we are of the opinion that the relator is entitled to the relief prayed for and that the writ of mandamus should issue and a suitable entry should be prepared and submitted according to rule.

In view of the conclusions reached, it would appear that the issuance of an interim injunction as requested by a motion will serve no useful purpose. Therefore, the motion is denied.

*Writ allowed.*

DUFFY and TROOP, JJ., concur.