THE STATE, EX REL. MARSHALL, APPELLEE, *v.* KELLER, ADMR., BUREAU OF WORKMEN'S COMPENSATION, ET AL., APPELLANTS.

[Cite as State, ex rel. Marshall, v. Keller, 10 Ohio St. 2d 85.]

(No. 40327—Decided April 19, 1967.)

*Mr. Gus Tarian,* for appellee.

*Mr. William B. Saxbe,* attorney general, *Mr. Donald M. Colasurd* and *Mr. William M. Culbert,* for appellants.

SCHNEIDER, J. Appellee sued for a writ of mandamus to require the "respondent, the Industrial Commission, to vacate and set aside its orders, made February 25, 1965, and May 6, 1965, and to conform with the law and evidence and allow his application for compensation, and for an order for the payment of benefits * * *." No specific relief is sought against the Administrator of the Bureau of Workmen's Compensation.

Appellee claims disability as a result of silicosis attributable to his occupation. The administrator denied an application to reopen appellee's previously disallowed claim for bene-

fits. The Canton Regional Board of Review reversed, finding total disability from silicosis contracted during the course of appellee's employment.

The order of February 25, 1965, adopted pursuant to a hearing held the same day, appears on its face to vacate the finding and order of the Board of Review on the ground of failure of proof and to be the action of M. Holland Krise and Joseph A. Cipollone as members of the Industrial Commission both of whom sat at the hearing.

The order of May 6, 1965, overruling appellee's motion for reconsideration of the decision of February 25, 1965, appears on its face to be the action of members M. Holland Krise and Richard W. Tobin and affirms the "finding and order * * * dated February 25, 1965."

The record in this appeal is comprised of the pleadings and a journal entry in the trial court reflecting a stipulation of the parties: (1) That the formal record of the bureau and the commission in appellee's claim be made a part of the record and considered as evidence in this case; and (2) "[t]hat Joseph A. Cipollone * * * was *appointed a member* of the Industrial Commission of Ohio January 27, 1965 by Governor James A. Rhodes * * *; that said appointee Joseph A. Cipollone *took office* February 1, 1965; and that the Senate refused to advise and consent to said appointment, Wednesday, March 3, 1965." (Emphasis supplied.) The status of Krise and Tobin acting as members of the Industrial Commission is not challenged.

The judgment of the Court of Appeals is dated April 12, 1966, which was nine months after its decision in *Brothers* v. *Zellar,* 3 Ohio App. 2d 43, and prior to the announcement of our reversal in that case on July 13, 1966 (7 Ohio St. 2d 109) but no reference was made to the *Brothers case.* However, by similar reasoning, the Court of Appeals determined that Cipollone lacked any authority "to assume or exercise the office as a member of the Industrial Commission," and "that the order of February 25, 1965, was the order of a single member of the commission and, therefore, invalid." Accordingly, the writ of mandamus was allowed as prayed for.

A majority of this court adopted a rule in *Brothers, supra* (7 Ohio St. 2d 109), which if required to be applied here would

hold Cipollone to be an officer *de jure*. On the other hand, the reasoning of the minority in that case probably would lead to the conclusion that Cipollone was never more than a stranger to the Industrial Commission. However, the question presented by *Brothers, i. e.*, whether the claimant to an office as a holdover is entitled to the compensation attributable to that office where another claims the same office for the same period of time under color of a gubnernatorial appointment without Senate action thereon, is substantially at variance with the proposition which confronts us here.

In view of the precise issue in this case, the majority of the court is of the opinion that the rule of law expressed in the syllabus should have governed this case in the Court of Appeals.

As early as 1848, in the case of *State, ex rel. Newman,* v. *Jacobs,* 17 Ohio 143, this court recognized the doctrine that one who has the reputation of being the officer he assumes to be is a *de facto* officer, although he might not be a good officer in point of law. Elaboration upon that doctrine was announced in *Ex Parte Strang,* 21 Ohio St. 610, paragraph two of the syllabus of which reads:

"2. To constitute an officer *de facto* of a legally existing office it is not necessary that he should derive his appointment from one competent to invest him with good title to the office. It is sufficient if he derives his appointment from one having colorable authority to appoint * * *."

Through the years, further delineation was developed, which Judge Sohngen summarized in *State, ex rel. Witten,* v. *Ferguson, Aud.,* 148 Ohio St. 702, at page 710:

"Thus, where an officer holds the office and performs the duties thereof with the *acquiescence of the public authorities and the public* and has the reputation of being the officer he assumes to be *and is dealt with as such,* he is, in the eyes of the law, a *de facto* officer." (Emphasis supplied.)

And, "* * * [t]he law validates the acts of *de facto* officers as to the public and third persons on the ground that, although not officers *de jure,* they are, in virtue of the particular circumstances, officers in fact whose acts public policy requires should be considered valid. * * *" *State, ex rel. Paul,* v. *Russell,* 162 Ohio St. 254, 257.

In accord are *State, ex rel. Wescott,* v. *Ring,* 126 Ohio St. 203; *Greenlee, Clerk,* v. *Cole,* 113 Ohio St. 585; *Stiess* v. *State,* 103 Ohio St. 33; *State* v. *Gardner,* 54 Ohio St. 24; *State, ex rel. Herron,* v. *Smith,* 44 Ohio St. 348; *Smith* v. *Lynch, Treas.,* 29 Ohio St. 261; and 44 Ohio Jurisprudence 2d 699 *et seq.,* Section 198 *et seq.*

Under the color of his commission from the Governor, Cipollone took possession of the office of member of the Industrial Commission and, apparently, performed regularly all the duties thereof for 24 days prior to the day in question without objection by his fellow members, associates, employees, or by other persons having business before the commission. Surely, he must have enjoyed repute as a member of the commission when appellee or his counsel in this case appeared before him. At least, a case to the contrary has not been made. And, nowhere in this record does any objection appear to Cipollone's participation in the hearing, at the hearing, in appellee's motion for reconsideration, or at any time until after receipt of the order of May 6, 1965. This absence of objection simply supports the conclusion that Cipollone was universally accepted as the officer he purported to be until the final decision adverse to appellee.

We are not to be understood as implying that our judgment in this case would be otherwise if an earlier objection had been made. The instability of decisions of public authorities inherent in permitting persons subject thereto to challenge collaterally the qualifications of the decision makers is too great to impel us to depart from long-established precedents, even when that challenge is made in the first instance, unless perhaps the challenge is relevant to a claim that the official lacks both legal qualification and public recognition and acceptance in the office which he pretends to hold and whose functions he presumes to exercise.

Appellee contended further that, although the order appears on its face to have been entered on February 25, 1965, it was in fact not made until March 16, 1965, or thereabouts, when a copy was received by him. Support for this contention is to be found only in certain documents from the records of the commission. No further evidence was presented in the court below. Because we find, as did that court, that the proofs are

insufficient to rebut the presumption that the entry was made on the date appearing on its face, it is unnecessary to consider whether Cipollone's *de facto* status subsequently disappeared.

There is a further contention that, although the entry purports to reflect a decision on the merits of the claim for disability, in fact it was based on lack of jurisdiction of the commission, Member Krise having interrupted the argument of appellee's counsel on the merits to discuss the jurisdictional question. To some extent, the record supports this contention. However, it does not show that appellee was not given an opportunity "to be heard * * * and to present the testimony of witnesses and other evidence," which is all that is required by Section 4123.518, Revised Code. Assuming that the jurisdictional question was considered as claimed and assuming further that argument was interrupted, the record contains nothing to show when this occurred and nothing to dispel the presumption that claimant's case was accorded a hearing as required and was considered on its merits by the Industrial Commission. In view of the foregoing, it is unnecessary for us to consider whether the overruling of claimant's motion for reconsideration had the effect of validating an antecedent void order appearing on the records of the commission.

The final issue before us at this time is appellee's contention that he was denied a hearing on his motion for reconsideration of the order of February 25th, and that he was thus denied due process. We have not been favored with a citation to any existing statute or rule which requires the Industrial Commission even to entertain such a motion let alone to grant a formal hearing thereon. Nor do we understand that the ambit of "due process" extends so far.

Accordingly, the judgment of the Court of Appeals is reversed, but the cause is remanded for further consideration of other errors asserted but not passed upon by that court.

*Judgment reversed.*

TAFT, C. J., HERBERT and BROWN JJ., concur.

MATTHIAS, J., concurs on the basis of *State, ex rel. Brothers,* v. *Zellar,* 7 Ohio St. 2d 109.

ZIMMERMAN and O'NEILL, JJ., dissent.

O'NEILL, J., dissenting. I dissent for the reasons stated in the dissenting opinion in *State, ex rel. Brothers,* v. *Zellar et al. Board of Tax Appeals,* 7 Ohio St. 2d 109, at page 118.

The instant case is but the first example to be brought before this court of what will be an increasing number of difficult and confusing situations which will confront appointive officials, legislators, private citizens and this court created by and flowing from this court's decision in *Brothers, supra.*

The majority opinion in the instant case chooses not to rely upon the holding of the majority in *Brothers, supra,* for the disposition of this case, but relies upon a different ground. Whereas the rule stated in the syllabus of *Brothers, supra,* abrogates the constitutional and statutory power of the Senate to advise and consent to a gubernatorial appointment and substitutes for that power a power to remove a person from office, the majority opinion in the instant case accords to Cipollone a lesser standing (*de facto officer*) than the majority opinion in *Brothers, supra,* would give him.

ZIMMERMAN, J., concurs in the foregoing dissenting opinion.