OPINION
{¶ 1} Defendant-appellant, Christopher Young, appeals a decision of the Warren County Court of Common Pleas denying his motion to suppress.
 {¶ 2} In the early hours of July 17, 2004, Morrow Police Chief Heath Kilburn (the "chief of police") met with Sergeant Traci Carr of the Warren County Sheriff's Office. Sgt. Carr asked the chief of police if he could have his father, Dick Kilburn, check on the probationary status of appellant. At the time, Dick Kilburn was an employee of the Warren County Court (the "county court") and had been its chief probation officer. Both Sgt. Carr and the chief of police had received information from an informant that appellant had a methamphetamine ("meth") lab in his house and that he was going to have a meth party at his house the following day.
 {¶ 3} Dick Kilburn believed appellant was on probation but called Libbie Gerondale to confirm. Gerondale, like Dick Kilburn, was an employee of the county court, and worked in the probation division. Gerondale confirmed that appellant, her nephew, was on probation. Dick Kilburn, accompanied by the chief of police, Sgt. Carr, and two deputies, went to appellant's house for a probation violation check.
 {¶ 4} Upon approaching appellant's house, the group detected a very strong chemical smell coming from the house. Sgt. Carr testified that the chemical smell, which was also later found all over inside the house, was indicative of a meth lab. As he approached the house, Dick Kilburn observed a beer can in the front yard. He and the chief of police then knocked on the front door, yelling "probation" and "police." Appellant eventually opened the door, and Dick Kilburn identified himself as a probation officer doing a probation violation check. In the house, Dick Kilburn observed a bottle of whiskey in the kitchen as well as a trash can full of beer cartons. Dick Kilburn also noticed an odor of alcohol on appellant and asked him if he had been drinking. Appellant admitted he had. Dick Kilburn told appellant he was under arrest for violating the conditions of his probation. He then had a deputy give appellant a portable breath test. Dick Kilburn testified the test was positive.
 {¶ 5} In the house, a friend of appellant, David Kaufman, made his presence known. Asked twice if anybody else was in the house, appellant replied "no." A quick sweep of the house was then done for officer safety. An individual armed with a knife was found hiding behind a door in the basement. Also found at that time were several signs of an active meth lab. As a result, the HAZMAT team and the fire department were called.
 {¶ 6} Following his arrest, appellant was removed from the house and placed in a police cruiser where he was Mirandized by Detective Bill Couch. Appellant indicated he understood his rights and signed a consent to search form. A search of the house ensued. Later at the jail, appellant was again Mirandized and gave a statement to the detective. On July 23, 2004, appellant was indicted on one count each of illegal possession of chemicals for the manufacture of drugs, illegal manufacture of drugs, and aggravated possession of drugs.
 {¶ 7} Appellant moved to suppress and/or dismiss on the ground that Dick Kilburn did not have the authority, statutory or appointed, to arrest him and/or search his house without a warrant. Specifically, appellant argued that while Dick Kilburn became chief probation officer at the county court in 1999, he vacated that position when he was appointed the county court administrator/chief bailiff in March 2004 by Judge Dallas Powers (the county court administrative judge). As a result, appellant argued, Dick Kilburn was no longer a probation officer on July 17, 2004, and therefore had no authority to arrest him and/or search his house without a warrant.
 {¶ 8} Following a hearing, the trial court denied the motion. The trial court found that on July 17, 2004 Dick Kilburn was a de facto chief probation officer of the county court entitled to make an arrest under R.C. 2951.08. The trial court further found that (1) observations made by Dick Kilburn warranted appellant's arrest, (2) the other officers were lawfully on the premises and entitled to make a sweep for officer safety, (3) appellant knowingly, intelligently, and voluntarily consented to the search of his house, and (4) he was questioned and spoke to police officers only after knowingly, intelligently, and voluntarily relinquishing his Miranda rights. Appellant subsequently entered a no contest plea and was sentenced accordingly.
 {¶ 9} In a single assignment of error, appellant argues it was error for the trial court to deny his motion because Dick Kilburn was not a de facto chief probation officer and had no authority, statutory or appointed, to arrest him and/or search his house without a warrant.
 {¶ 10} An appellate court's review of a ruling on a motion to suppress presents a mixed question of law and fact. State v. Long (1998),127 Ohio App.3d 328, 332. When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate witness credibility. State v. Curry (1994), 95 Ohio App.3d 93, 96. As such, we accept the trial court's findings of fact so long as they are supported by competent, credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592, 594. However, an appellate court independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, "whether as a matter of law, the facts meet the appropriate legal standard." Curry at 96.
 {¶ 11} "A de facto officer may be defined as one who, although not an officer in point of law, has the reputation of being the officer he assumes to be and is accepted as such by those who deal with him." Stateex rel. Witten v. Ferguson (1947), 148 Ohio St. 702, 708. "[T]he officer holds his office without protest, not under an invalid election or appointment, but under some other claim of right, and has been recognized and dealt with by the public as such officer. In such situation, his reputation as such officer and the acquiescence of the public take the place of or furnish the color of right." Id. at 709. "Thus, where an officer holds the office and performs the duties thereof with the acquiescence of the public authorities and the public and has the reputation of being the officer he assumes to be and is dealt with as such, he is, in the eyes of the law, a de facto officer." Id.
 {¶ 12} "The law validates the acts of the de facto officers as to the public and third persons on the ground that, although not officers de jure, they are, in virtue of the particular circumstances, officers in fact whose acts public policy requires should be considered valid." Stateex rel. Marshall v. Keller (1967), 10 Ohio St.2d 85, 87; State v.Wilkerson (Apr. 19, 1979), Franklin App. No. 78AP-539.
 {¶ 13} Upon thoroughly reviewing the record, we find that Dick Kilburn was a de facto chief probation officer on July 17, 2004. It is undisputed that Dick Kilburn was appointed chief probation officer at the county court in 1999, and that he was appointed the county court administrator/chief bailiff in March 2004. The responsibilities of the court administrator/bailiff were described as follows: "Court Administrator is responsible under the direction of the Administrative Judge, to direct activities of the Warren County Court and supervises office personnel and probation department, * * * performs other related duties as required. As Chief Bailiff, he/she is responsible for various duties and responsibilities for the court as required by the Ohio Revised Code and by local rule of the court."
 {¶ 14} It is also undisputed that on July 17, 2004, Dick Kilburn told Judge Powers he had arrested appellant. The next day, Judge Powers told Dick Kilburn the arrest was problematic as he was not a probation officer. Dick Kilburn was, however, not reprimanded for the arrest. By letter dated August 12, 2004, Judge Powers told him he was no longer the county court administrator/bailiff, and that he was not a probation officer. Judge Powers admitted that July 18 was the first time he expressed concerns to Dick Kilburn about his lack of probationary authority, and that the August 12 letter was the first time he put in writing that Dick Kilburn did not have the authority to act as a probation officer.
 {¶ 15} Dick Kilburn testified that when he became the county court administrator/bailiff, he believed these were simply additional duties and that he continued to be chief probation officer. On the day he arrested appellant, he was wearing a badge that said "chief probation officer," a badge he was directed to turn in by Judge Powers' August 12 letter. Dick Kilburn testified that at least until July 17, 2004 he continued to handle probation responsibilities, filing complaints against probationers and testifying in court as a probation officer both before Judge Powers and Judge James Heath (the other county court judge). Dick Kilburn also testified he was sent by Judge Powers to a seminar sponsored by the Ohio Chief Probation Officers Association on July 24 and 25, 2004.
 {¶ 16} Morrow Police Chief Heath Kilburn and Sgt. Carr both testified that Dick Kilburn was contacted on July 17, 2004 in his capacity as the county court chief probation officer. Neither the chief of police or Sgt. Carr were aware that Dick Kilburn had moved to a different position at the county court. Joyce Baker, a probation officer at the county court, testified that after Dick Kilburn became the administrator/bailiff, his duties and functions in the probation department did not really change and that they were not advised of any change in his capacity as chief probation officer until Judge Powers formally relieved him of those duties with the August 12 letter. Baker testified she thought him to be chief probation officer and her supervisor. Baker confirmed that between April and July 2004 Dick Kilburn acted as probation officer in Judge Heath's courtroom, responding to Judge Heath's probation questions.
 {¶ 17} Judge Powers testified that he did not intend for Dick Kilburn to be a probation officer after his March 2004 appointment, and that once he appointed Dick Kilburn as the court administrator/bailiff, the latter only had supervisory authority over the probation department and no longer had the authority to act as a probation officer. As the judge stated, "there should have been no question." Judge Powers also testified that the mere fact of wearing a chief probation officer badge did not grant Dick Kilburn probationary authority. However, as previously indicated by Judge Powers' testimony, there is no evidence that before he arrested appellant, Dick Kilburn was told orally or in writing that once he became the court administrator/bailiff, he no longer had the authority to act as a probation officer.
 {¶ 18} Judge Powers also testified that he did not know that Dick Kilburn was acting as a probation officer (until after appellant's arrest), went to the chief probation officers seminar, or filed probation complaints. He acknowledged, however, signing the form sending Dick Kilburn to the seminar, and that several fact sheets and probation complaints were signed by Dick Kilburn between April and the end of July 2004.
 {¶ 19} The foregoing clearly shows that until July 18, 2004 Dick Kilburn was never told orally or in writing that he no longer had authority as a probation officer. He clearly was thought to be the chief probation officer by law enforcement authorities and by at least one probation officer. After he was appointed court administrator/bailiff, he apparently continued his former duties as a chief probation officer, including appearing in court and filing complaints, without any objection by the county court judges and probation officers. This absence of objection clearly supports the conclusion that Dick Kilburn was accepted as the chief probation officer he purported to be until after appellant's arrest. Keller, 10 Ohio St.2d at 88. We therefore find that the trial court did not err by finding that Dick Kilburn was a de facto chief probation officer on July 17, 2004 entitled to make an arrest under R.C.2951.08.
 {¶ 20} Appellant also argues that the evidence failed to establish that appellant violated his probation. We disagree.
 {¶ 21} Appellant was on probation the day he was arrested. Both Dick Kilburn and the chief of police testified observing a bottle of whiskey and a trash can full of beer cartons inside the house. Dick Kilburn also testified that he detected an odor of alcohol on the person of appellant who admitted drinking beer. Dick Kilburn testified that these observations constituted violations of appellant's probation conditions. Both Dick Kilburn and the chief of police testified that appellant was given a portable breath test at the scene. Dick Kilburn testified that the test was positive.
 {¶ 22} Appellant, however, argues that "there is clearly a legitimate question as to whether the State established a probation violation" based upon the following conflicting testimony: Detective Couch and appellant's friend, David Kaufman, both testified that there was no odor of alcohol on appellant's person. The detective also testified that appellant was not intoxicated. Sgt. Carr and Kaufman both testified that they did not see any breath test performed on appellant at the scene. Kaufman testified that he "[did not] believe [appellant] drank at all that day." However, Detective Couch testified appellant admitted drinking alcohol much earlier. A probation violation was never filed in the county court. However, Judge Powers testified that it could have been filed in the common pleas court with the charges against appellant.
 {¶ 23} Although conflicting testimony was presented, the trial court was in the best position to resolve this conflict based on its determination of the credibility of the witnesses and the testimony. SeeMiddletown v. Mullins, Butler App. No. CA2003-05-122, 2004-Ohio-3349. We therefore find that the evidence presented at the hearing established that appellant violated his probation. The trial court did not err by finding that appellant's arrest was warranted by Dick Kilburn's observations of appellant's probation violation.
 {¶ 24} Finally, in a supplemental brief, appellant summarily argues that the de facto officer doctrine does not apply where it violates a defendant's constitutional rights under the Fourth Amendment of the United States Constitution. Appellant cites Ryder v. United States
(1995), 515 U.S. 177, 115 S.Ct. 203, in support of his argument.
 {¶ 25} In Ryder, the petitioner challenged his conviction by a court-martial on the ground that the two civilian judges who had served on the Coast Guard Court of Military Review had not been appointed in accordance with the Appointment Clause of Section 2, Article II, United States Constitution. The U.S. Court of Military Appeals agreed but nonetheless held that the actions of the two judges were valid de facto. The Supreme Court reversed, holding that the judges' actions were not valid de facto. Ryder did not hold that the de facto officer doctrine is never applicable whenever one challenges the constitutionality of the appointment of an officer under the Appointment Clause. Rather, Ryder held that the doctrine could not be invoked to authorize the actions of the judges in question because of the difference in function and authority between the courts, and because the cases in which the Supreme Court relied upon the doctrine (in deciding criminal defendants' challenges to the authority of a judge who participated in the proceedings leading to their conviction and sentence) were procedurally and legally distinguishable.
 {¶ 26} Appellant also quotes the following from Ryder: "In GliddenCo. v. Zdanok, 370 U.S. 530, * * * 82 S.Ct. 1459 (1962), we declined to invoke the de facto officer doctrine in order to avoid deciding a question arising under Article III of the Constitution, saying that the cases in which we had relied on that doctrine did not involve `basic constitutional protections designed in part for the benefit of the litigants.' * * * We think that one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred. Any other rule would create a disincentive to raise Appointments Clause challenges with respect to questionable judicial appointments." Id. at 182-183, 115 S.Ct. 2031.
 {¶ 27} In Glidden, the Supreme Court granted certiorari to determine whether the judgment in two cases was vitiated by the respective participation of the judges named. No challenge to the authority of the judges had been filed in the course of the proceedings before them in either case. As a result, the government suggested that the petitioners should be precluded by the de facto doctrine from questioning the validity of theses designations for the first time on appeal. The Supreme Court disagreed, noting that because the alleged defect of authority related to basic constitutional protections designed in part for the benefit of litigants, it should be examinable at least on direct review. Id. at 536, 82 S.Ct. 1459. The Supreme Court also noted that "A fortiori is this so when the challenge is based upon nonfrivolous constitutional grounds. In McDowell v. United States itself, * * * the Court, while holding that any defect in statutory authorization for a particular intracircuit assignment was immunized from examination by the de facto
doctrine, specifically passed upon and upheld the constitutional authority of Congress to provide for such an assignment." Id.
 {¶ 28} We have not found, and appellant has not cited, any cases holding that the de facto officer doctrine does not apply when rights under the Fourth Amendment are allegedly violated. We decline to extend the holding in Ryder and Glidden to the case at bar. We therefore find that the trial court properly applied the de facto officer doctrine in the case at bar.
 {¶ 29} To the extent that appellant has raised other various issues on appeal, we have considered them and find them to be without merit. Appellant's assignment of error is overruled.
 {¶ 30} Judgment affirmed.
Powell, P.J., and Walsh, J., concur.